
IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

NATHANIEL WILLIAMS,

    Petitioner,                      No. CIV S-06-1546 GEB GGH P

    vs.

CLAUDE E. FINN, et al.,            ORDER AND

    Respondents.              FINDINGS AND RECOMMENDATIONS

_____/

I. Introduction

        Petitioner is a state prisoner proceeding through counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2005 conviction for the prison disciplinary of unlawful influence of staff in violation of Cal. Code Regs. tit. 15, § 3013. Petitioner alleges that he was denied witnesses, the hearing officer was biased and that there was insufficient evidence to support his conviction. After carefully considering the record, the court recommends that the petition be denied.

II. Anti-Terrorism and Effective Death Penalty Act (AEDPA)

        The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. Neelley v. Nagle, 138 F.3d 917 (11th Cir.), citing Lindh v. Murphy, 521 U.S. 320, 117 S. Ct. 2059 (1997). The

1

AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

\\\\\

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S. Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

The San Joaquin Superior Court was the last state court to issue a reasoned opinion addressing the claims. See Exhibits attached to petition. Accordingly, this court considers whether the denial of the claims by the Superior Court was an unreasonable application of clearly established Supreme Court authority. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000) (when reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision).

III. Discussion

    A. Denial of Witnesses

To put this claim in context, the court will set forth the information contained in the rules violation report. Dr. Prine, the reporting employee, described the offense as follows:

\\\\\

> On Friday, May 13, 2005, at approximately 1000 hours, Inmate WILLIAMS, C-41352, L-332, tried to manipulate me into bringing him a cell phone. Approximately 6 or 7 months ago, WILLIAMS made a comment about getting something for his birthday and mentioning a cell phone. Sometime around Christmas he mentioned again that he would like to have a cell phone. More recently he has been bringing the subject up more frequently. I believe he is very serious about wanting a cell phone. My concern for the safety and security of the institution and the community at large, as well as over familiarity issues prompt a report at this time. Inmate WILLIAMS is not a participant in the Mental Health Delivery System. Positive Identification was made by State issued ID card. Inmate WILLIAMS is aware of this report.

Answer, Exhibit B.

The Supplemental Rules Violation Report prepared by Officer Merilles states,

> On Friday, May 13, 2005, at approximately 1400 hours, Inmate WILLIAMS, C-41352, L-332, tried to manipulate D.W. Prine PsyD. by asking Prine to bring in a cell phone and breach institutional security. WILLIAMS told Prine he had $200.00 in stamps to facilitate getting him the cell phone. On Monday, May 16, 2005, I conducted a search of WILLIAMS cell, L-332, during the search I discovered and took control of approximately 1300 U.S. stamps worth approximately $480.00. I secured the stamps in the D.V.I. evidence chute per procedure. WILLIAMS was identified by his state issued I.D. card and is aware of this CDC rules violation report.

Answer, Exhibit B.

At the hearing, petitioner testified as follows:

> Q: At anytime did you talk to Dr. Prine about a cell phone?
> A: No.
> Q: Did you ever say you had $200.00 in stamps that you would give him?
> A: No.
> Q: Did you tell Dr. Prine you were getting a cell phone for Christmas?
> A: No.
> Q: Did you ever imply that Dr. Prine bring you a cell phone?
> A: No.

Answer, Exhibit B.

At the hearing, Officer Merilles testified as follows:

> Q: On your report you said that Inmate WILLIAMS requested Dr. Prine to bring in a phone. Is this something you saw or were you informed?
> A: I was informed about 1400 hours that this had taken place.

Answer, Exhibit B.

\\\\\

At the hearing, Dr. Prine answered petitioner's questions as follows:

> Q: Why did you state that I tried to manipulate you into bringing me a cell phone?
> A: Because it is a true statement.
> Q: Why did you state this took place at 1000 hours when a Correctional Officer Merilles said it took place at 1400 hours?
> A: I don't recall Correctional Officer Merilles being present or involved at all.
> Q: Why did you allow 6 or 7 months to pass before reporting anything?
> A: I thought you were kidding.
> Q: How did I tell you I would give you $200.00 in stamps?
> A: It was about 10:00 and you and I were alone by the copy machine. You said, I have 200 stamps for that cell phone. I did not respond to you and went and talked to ISU.
> Q: Isn't it true that you had a grudge against me ever since I told on you last year?
> A: No, that is not true. I had no knowledge of you ever telling on me.

Answer, Exhibit B.

At the hearing, Officer Merilles answered a question from petitioner:

> Q: You said that at 1400 hours I tried to manipulate Dr. Prine but Dr. Prine said it was at 1000 hours. How could this be?
> A: The report should read that this was brought to my attention at 1400 hours. That's why I conducted my search of your cell.

Answer, Exhibit B.

Regarding petitioner's witnesses, the rules violation report states, "Witnesses Dr. Dhaliwal, Dr. Hansen, Dr. Bills, Dr. Pique did not have any knowledge or pertinent information to add so they were disallowed. None of Inmates WILLIAMS witness were present." Answer, Exhibit B.

The rules violation report states that petitioner was found guilty based on the following evidence: "1) Contents of the CDC-115, Log # 05-05-015-P, authored by Correctional Officer Dr. Prine that indicates Inmate WILLIAMS, C-41352, requested him to bring in a cell phone. 2) That a search conducted of Inmate WILLIAMS cell produced $480.00 worth of stamps. 3) Inmate WILLIAMS did have the means coupled with the present ability to carry out the attempt to gain a cell phone." Id.

In the instant petition, petitioner claims that he was denied his right to call witnesses. A prisoner facing disciplinary charges is allowed to call witnesses. Wolff v.

5

McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963 (1974). Prison officials may deny a prisoner's request to present witnesses if the witnesses' testimony would be irrelevant, unnecessary or hazardous to the institution. Id. at 566, 94 S.Ct. 2963.

In the petition and reply to the answer, petitioner claims that before the hearing he was told to identify four witnesses, and that he could name the rest of the witnesses at the hearing. As indicated above, the rules violation report states that petitioner's request for Dr. Dhaliwal, Dr. Hansen, Dr. Bills and Dr. Pique to testify as witnesses was denied because they did not have pertinent information. In the petition and reply, petitioner alleges that at the hearing he requested three additional witnesses: K. Martin, Correctional Officer Sherman and Dr. Young.

Attached to the petition and reply as exhibits are petitioner's questions for some of these proposed witnesses. The first question to Dr. Dhaliwal asked if Dr. Prine ever talked to him about the incident. Petition, p. 30 of 44. The second question asked if he, Dr. Dhaliwal, had ever talked to his staff about when to report inmate rules violations. Id. The third question asked, "Would you say that May 13, 2005, that I was working a clerk job doing duties that is supposed to be handled by two inmates, under stress, but trying to please and handle the duties?" Id. The fourth question asked if he thought plaintiff was an asset to the psych area. Id. Finally, question five asked if he thought petitioner was manipulative. Id.

Petitioner proposed asking four questions to Dr. Hansen. First, he asked if Dr. Hansen remembered petitioner telling her that he told Dr. Prine that he was not filling in bubble questions properly. Id. at 31. Second, he asked if she had ever heard Dr. Prine make any negative or positive statements about petitioner. Id. Third and fourth, petitioner asked if Dr. Hansen thought he was an asset to the pscyh area and whether she thought he was manipulative. Id.

The proposed questions to Dr. Dhaliwal and Dr. Hansen did not seek information regarding their personal knowledge of the May 13, 2005, incident. These questions were not relevant to petitioner's defense, which was that at 10:00 a.m. on May 13, 2005, he could not have

6

1  been asking Dr. Prine for a cell phone because he was performing his duty as a clerk for
2  psychiatric screenings in the dining hall.  The San Joaquin County Superior Court, the last state
3  court to review this claim on the merits, stated that "petitioner's positive relations with staff" was
4  not relevant.  Petition, p. 40 of 44.  This finding was not an unreasonable application of clearly
5  established Supreme Court authority.  Because Dr. Prine's claim was corroborated by the fact
6  that $480 worth of stamps was found in petitioner's cell, evidence of petitioner's character and
7  Dr. Hansen's recounting of petitioner's description of a previous conflict with Dr. Prine was, at
8  best, marginally relevant.

9  In his post-evidentiary hearing briefing, petitioner cites authority standing for the
10 proposition that in criminal trials, defendants have a right to present character evidence.
11 However, petitioner cites no clearly established Supreme Court authority standing for the
12 proposition that a prisoner in a prison disciplinary proceeding has an absolute right to present
13 character evidence.  Rather, he has a right to present witnesses who have relevant testimony.  The
14 character evidence in this case was marginally relevant because of the strong evidence against
15 petitioner.

16 Petitioner provided no questions directed to Dr. Pique.  Because petitioner has not
17 met his burden of demonstrating that Dr. Pique had information relevant to his defense, the court
18 finds no due process violation occurred as a result of the denial of his request to call Dr. Pique as
19 a witness.

20 The questions attached to the petition and reply addressed to Dr. Bills, Dr. Young,
21 K. Martin and Officer Sherman were relevant as they concerned petitioner's whereabouts at
22 approximately 10:00 a.m. on May 13, 2005.  For this reason, on May 16, 2007, the court ordered
23 respondents to file declarations from Dr. Bills, J. Young, K. Martin and Officer Sherman
24 regarding their knowledge of petitioner's whereabouts at this time.

25 On July 13, 2007, respondent submitted the declarations requested by the May 16,
26 2007, order.  K. Martin stated that he was not familiar with petitioner and had no recollection of

the May 13, 2005, incident. S. Sherman and Dr. Young stated that they were familiar with petitioner and the May 13, 2005, incident. However, neither S. Sherman nor Dr. Young knew if petitioner was in the West Hall doing screenings at 10:00 a.m. that day. Respondent's counsel was unable to locate Dr. Bills.

Because neither S. Sherman nor Dr. Young have relevant knowledge regarding petitioner's whereabouts at 10:00 a.m. on May 13, 2005, the court finds no due process violation occurred as a result of the denial of petitioner's request to call them as witnesses.

On August 8, 2007, petitioner filed a motion to compel, claiming that K. Martin's declaration was false because they did know each other. Petitioner stated that he and K. Martin participated in a youth diversion group and worked together for ten years. Petitioner also stated that K. Martin stopped speaking to him after he was found guilty of the at-issue disciplinary. Petitioner also claimed that on May 13, 2005, K. Martin was the officer of the housing unit and should have kept a log to show inmate movement. Because petitioner's motion to compel put K. Martin's credibility at issue, on January 22, 2008, the court ordered an evidentiary hearing as to K. Martin's knowledge of petitioner and the incident. On March 25, 2008, the court appointed counsel to represent petitioner at the evidentiary hearing.

On October 20, 2008, the evidentiary hearing was held. At this hearing, K. Martin testified. Because petitioner was able to locate Dr. Bills, she testified as well.

At the evidentiary hearing, K. Martin testified that he knew petitioner from the Straight Life Program and from being an inmate at DVI. Id. at 26. He testified that when he signed his declaration in June 2007 saying he did not know petitioner, it was because at the time he did not recall who petitioner was. Id.

At the evidentiary hearing, K. Martin testified that in 2005-2006, he worked as a correctional officer in the West Hall housing unit. Id. at 29-30. While petitioner was not housed in the West Hall, K. Martin knew him because he came in there during the psych interviews. Id. at 30. In May 2005, he did not know that petitioner had been written up for attempting to bribe

1  staff.  Id.  K. Martin had no independent knowledge of the facts regarding that incident.  Id. at
2  30-31.  Had he been called as a witness at the disciplinary hearing, K. Martin would have been
3  unable to testify regarding petitioner's location at 10:00 a.m. on May 13, 2005.  Id. at 31.
4  　　　　　After listening to the testimony at the hearing, the court does not find that K.
5  Martin sought to intentionally mislead the court when he stated in his original declaration that he
6  did not know petitioner.  Because it is clear that he has no personal knowledge of the May 13,
7  2005, incident, the denial of petitioner's request to call him as a witness at the disciplinary
8  hearing did not violate due process.
9  　　　　　Dr. Bills, a licensed clinical social worker, testified at the evidentiary hearing that
10  in May 2005 she worked at the Deuel Vocational Institution Mental Health Unit.  Transcript
11  from Evidentiary Hearing filed November 4, 2008, p. 4.  Her duties included screening inmates
12  for mental health problems.  Id., p. 5.  She performed the screenings in the dining halls of the
13  prison.  Id., p. 8.
14  　　　　　Dr. Bills and her two inmate clerks would walk to the dining halls at around 10:00
15  a.m. to begin the screenings.  Id.  Petitioner was one of her clerks.  Id. at 10.  While Dr. Bills
16  performed the screenings, the inmate clerks would give the inmates forms for the screenings and
17  manage the line of inmates, who stood waiting to enter the dining hall.  Id. at 9.  One of the
18  inmate clerks would stand outside of the dining hall while the other would be inside.  Id. at 10.
19  The inmate clerk standing outside would pass out the forms and call the names of inmates to be
20  screened.  Id. at 10.
21  　　　　　Dr. Bills remembered that petitioner was working as her clerk on May 13, 2005.
22  Id. at 11.  She specifically remembered seeing petitioner standing by the door of the dining hall.
23  Id. at 12.  When Dr. Prine entered the dining hall, she saw petitioner standing in the dining hall
24  by the door.  Id.  She remembered that when Dr. Prine entered the dining hall, he (Dr. Prine) was
25  smiling.  Id.  Petitioner said something to Dr. Prine as he walked by.  Id.  Dr. Prine's face then
26  dropped and he gave petitioner an irritated look.  Id. at 13.  To the best of her knowledge,

petitioner remained in the dining hall/screening room for the rest of the work day. Id. at 13. Dr. Bills testified that petitioner had a reputation as a rule abiding inmate. Id. at 17-18.

Most importantly, Dr. Bills testified that she did not know petitioner's whereabouts at approximately 10:00 a.m. on May 13, 2005:

> Q: So do you remember back, and could you have testified where inmate Williams was at approximately 10:00 a.m.?
>
> A: I think I could have because the incident–that would have been less than a month or so, and I think–and because it was such a, you know, a chaotic day.
>
> Q: Well, as you sit here today, can you testify where inmate Williams was at approximately 10:00 a.m. that morning?
>
> A: No, I can't.

Id. at 23.

Dr. Bills had no independent recollection regarding petitioner's whereabouts at approximately 10:00 a.m. on May 13, 2005. Her testimony that she thinks she would have been able to testify to his whereabouts at the disciplinary hearing because it was closer to the day of the actual incident is not persuasive evidence that she actually knew where he was at that specific time on that day.

In his post-evidentiary hearing brief, citing Moye v. Selsky, 826 F.Supp. 712 (S.D.N.Y. 1993), petitioner argues that the test for whether Dr. Bills should have been allowed to testify at the disciplinary hearing is whether her testimony would have been helpful, not whether it would have provided an airtight defense. Post-hearing brief, p. 14. Petitioner argues that Dr. Bills' testimony would have provided some corroboration of petitioner's version of events.

It is true that Dr. Bills' testimony regarding her general practices would have corroborated petitioner's testimony that he was working as her clerk on that day. However, this matter was undisputed. The issue was where petitioner was at approximately 10:00 a.m. Dr. Bills' had no specific memory regarding this issue. For this reason, her testimony was not "compelling evidence of [petitioner's] innocence." Moye, 826 F.Supp. at 718.

In his post-evidentiary hearing brief, petitioner also argues Dr. Bills could have testified in support of petitioner's claim that Dr. Prine held a grudge against him. Post-hearing brief, p. 15. Petitioner argues that at the disciplinary hearing, petitioner asked Dr. Prine if he got mad at him for making a comment about keeping "banker's hours" when he arrived late for the screening on the day in question. Id. Petitioner argues that Dr. Bills' testimony that Dr. Prine looked irritated when he walked by petitioner on that day would have supported petitioner's claim that Dr. Prine made up the charges to retaliate against petitioner for making this comment.[1]

As discussed above, the record from the disciplinary hearing itself (respondent's exhibit B) contains no reference to petitioner asking Dr. Prine about banker's hours on the day of the incident. Rather, the record from the disciplinary hearing indicates that petitioner asked Dr. Prine if he held a grudge against petitioner for something that had happened the previous year. Petitioner did not ask Dr. Prine regarding whether he was irritated against him for the "banker's hours" comment.

Petitioner also argues that Dr. Bills should have been allowed to testify at his hearing regarding his good character. As discussed above, it was not unreasonable for the hearing officer to limit the testimony and evidence at the hearing to that directly related to the charges.

For the reasons discussed above, after conducting an AEDPA review, the court finds that the denial of this claim was not an unreasonable application of clearly established Supreme Court authority. This claim should be denied.

---

[1] This court observes that petitioner has made several suggestions as to why Dr. Prine may have been holding a grudge against him. In addition to being irritated at petitioner for the "banker's hours" comment, in his declaration submitted in support of his administrative appeal petitioner claims that he caught Dr. Prine sitting at his desk chopping up cocaine. Answer, Exhibit C, p. 23 of 44. Petitioner claims that Dr. Prine later offered him a Playboy magazine and a cell phone. Id. Petitioner claims that he rejected these offers. Id. at 24 of 44. Petitioner also claims that he heard Dr. Prine say, "All I need is a few stamps..." Id. Petitioner also suggests, in his proposed question to Dr. Hansen that Dr. Prine held a grudge against him for complaining that he (Dr. Prine) was incorrectly filling out the psych screening forms. Petition, p. 31 of 44.

11

### B. Insufficient Evidence

Petitioner argues that there was insufficient evidence to support the guilty finding. Due process requires that the findings of a disciplinary board must be upheld if the decision is supported by "some evidence." Superintendent v. Hill, 472 U.S. 445, 454, 105 S.Ct. 2768 (1985). Hill states that in applying the "some evidence" standard, courts are nor required to examine the entire record, independently assess credibility of witnesses or weigh the evidence. Id. at p. 455, 105 S.Ct. 2768. The court must only decide if there is any evidence in the record which would support the conclusion reached. Id. at pp. 455-456, 105 S.Ct. 2768.

As discussed above, the hearing officer found petitioner guilty based on Dr. Prine's report that petitioner asked him for the cell phone in exchange for stamps. The hearing officer also relied on evidence that $480 worth of stamps was found in petitioner's cell. This constituted sufficient evidence to support the guilty finding.[2]

After conducting the AEDPA review, the court finds that the denial of this claim was not an unreasonable application of clearly established Supreme Court authority.

### C. Biased Hearing Officer

Petitioner argues that the hearing officer at his disciplinary hearing, Lieutenant Smith, was biased against him. To satisfy due process, the decision maker at a prison disciplinary hearing must be impartial and must reach a decision on a non-arbitrary basis. Wolff v. McDonnell, 418 U.S. 539, 570-71, 94 S.Ct. 2963 (1974).

In the petition, petitioner states that Lieutenant Smith told him that she removed him from his L-3 housing and reassigned him from his job before he received any written notice

---

[2] In his December 19, 2008, post-evidentiary hearing briefing, petitioner suggests that additional evidence was presented at the disciplinary hearing. For example, petitioner cites his own declaration, attached to the answer as part of Exhibit C. According to the answer, Exhibit C includes the records from petitioner's administrative appeal. Exhibit B includes the record from the disciplinary hearing. In evaluating the evidence considered by the hearing officer, the court will not consider the additional documentation petitioner submitted in support of the grievance procedure. The court will only consider the evidence referenced in Exhibit B.

of the charges and before the disciplinary hearing. Petitioner argues that Lieutenant Smith had no authority to take this action and should not have been the hearing officer.

Even if state law or regulations did not authorize Lieutenant Smith to remove petitioner from his job and housing unit or to conduct the disciplinary hearing, this does not necessarily mean that she reached her decision impartially so as to violate the constitution. As discussed above, the decision to deny petitioner's request for witnesses was not unreasonable as they had no information directly relevant to the circumstances of the offense. In addition, there was sufficient evidence to support the charges. For these reasons, the court does not find that Lieutenant Smith was not impartial or acted in an arbitrary basis in finding petitioner guilty.

After conducting an AEDPA review, the court finds that the denial of this claim was not an unreasonable application of clearly established Supreme Court authority.

IV. Motion to Expand the Record

On December 19, 2008, petitioner filed a motion to expand the record to include the declarations of Dr. Dhaliwal, Dr. Hansen and Dr. Young. Habeas Rule 7 grants a district court the discretion to expand the record with additional materials which are relevant to the petition. Rule 7(a) of Rules Governing Section 2254 Cases. The rule is intended to help district courts to "clarify the relevant facts." Vasquez v. Hillery, 474 U.S. 254, 258, 106 S.Ct. 617 (1986).

In his declaration attached to the motion to expand, Dr. Dhaliwal states that he was surprised to learn of Dr. Prine's accusation against petitioner because the alleged misconduct was inconsistent with his view of petitioner as a hardworking inmate. In her declaration, Dr. Hansen states that she thought that petitioner was honest and rule abiding. In addition, petitioner had told her that he had confronted Dr. Prine about not properly filling out bubble sheets. In her declaration, Dr. Young states that petitioner was hardworking, honest and rule abiding. Dr. Young has no personal knowledge of the May 13, 2005, incident.

\\\\\

In their declarations, neither Dr. Dhaliwal, Dr. Young nor Dr. Hansen state that they have any personal knowledge of the May 13, 2005, incident between petitioner and Dr. Prine. Rather, they offer their opinions regarding petitioner's character. Dr. Hansen states that petitioner told her about a previous conflict with Dr. Prine. As discussed above, neither testimony regarding petitioner's character nor testimony regarding a conversation in which petitioner discussed his previous conflict with Dr. Prine were sufficiently relevant to the facts at issue at the disciplinary hearing. For this reason, the motion to expand the record is denied.

V. Conclusion

Attached to respondent's post-hearing brief is a declaration by K. Martin dated February 3, 2009. In this declaration, K. Martin states that his log book shows that on May 13, 2005, the inmate assistant/psych techs arrived at the housing unit to conduct the screenings at 10:35 a.m. This evidence seriously undercuts petitioner's claim that on that date at 10:00 a.m. he was already at his job.

On February 13, 2009, petitioner filed a motion to strike K. Martin's February 3, 2009, declaration. Petitioner argues that the court previously denied his request to discover logs and other documents related to the time of events. The court has determined that petitioner's habeas petition should be denied without consideration of K. Martin's February 3, 2009, declaration. Accordingly, the motion to strike is denied as unnecessary.

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's motion to expand the record (no. 43) is denied;

2. Petitioner's February 13, 2009, motion to strike (no. 49) is denied as unnecessary, and the hearing set for March 26, 2009 at 10:00 a.m. is vacated;

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

14

1. days after being served with these findings and recommendations, any party may file written
2. objections with the court and serve a copy on all parties.  Such a document should be captioned
3. "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
4. shall be served and filed within ten days after service of the objections.  The parties are advised
5. that failure to file objections within the specified time may waive the right to appeal the District
6. Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).
7. DATED:   02/26/09

                                                 /s/ Gregory G. Hollows

                                                 UNITED STATES MAGISTRATE JUDGE

will1546.157